IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT DOUGLAS HOOPER,

        Petitioner,

   vs.

KEN CLARK,

        Respondent.

_____/

No. CIV S-08-1773-TJB

ORDER DENYING REQUESTS AND PETITION FOR WRIT OF HABEAS CORPUS; DIRECTING CLERK OF COURT TO ENTER JUDGMENT; AND DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY

## I.  INTRODUCTION

Petitioner Robert Douglas Hooper is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.  *See* Pet'r's Consent 1, ECF No. 5; Resp't's Consent 1, ECF No. 15.  For the following reasons, (1) Petitioner's requests are denied; and (2) the habeas petition is denied.

## II.  PROCEDURAL HISTORY

On March 4, 2005, Petitioner pleaded guilty to:

1.  Possession of methamphetamine under Section 11377(a) of the California Health and Safety Code (counts one and eleven);

2.  Possession of a smoking device under Section 11364 of the California Health and

1

Safety Code (counts two, four, eight, and thirteen);

3.   Possession of marijuana of 28.5 grams or less under Section 11357(b) of the California Health and Safety Code (counts five and fourteen);

4.   Transportation of methamphetamine under Section 11379(a) of the California Health and Safety Code (count six);

5.   Driving when privilege suspended or revoked with prior under Section 14601.1(a) of the California Vehicle Code (count nine), where Petitioner also admitted having two priors;

6.   Driving without evidence of financial responsibility under Section 16028(a) of the California Vehicle Code (count ten); and

7.   Unauthorized possession of a prescription drug under Section 4060 of the California Business and Professions Code (count twelve).

Lodged Doc. No. 1, Clerk's Tr. vol. 1, 41-45, 49-50; *see* Lodged Doc. No. 6, at 1-2.  Petitioner also admitted to two on-bail enhancements under Section 12022.1 of the California Penal Code for counts one and three.  Lodged Doc. No. 1, Clerk's Tr. vol. 1, 50; *see* Lodged Doc. No. 6, at 2. Petitioner demanded a jury trial on the remaining counts, first degree residential burglary under Section 459 of the California Penal Code (count three), and evading an officer under Section 2800.1(a) of the California Vehicle Code (count seven).  Lodged Doc. No. 1, Clerk's Tr. vol. 1, 49.

On July 5, 2005, an Amador County jury found Petitioner guilty of first degree residential burglary (count three), but not guilty of evading an officer (count seven).  *Id.* at 76.

On September 15, 2005, the trial court sentenced Petitioner to a total prison term of ten years and four months.  *Id.* at 178.

Petitioner directly appealed to the California Court of Appeal, Third Appellate District. *See* Lodged Doc. No. 3.  On March 7, 2007, the California Court of Appeal issued a reasoned decision affirming the judgment.  *See* Lodged Doc. No. 6.

2

On April 13, 2007, Petitioner filed a petition for review with the California Supreme Court. *See* Lodged Doc. No. 7.  On May 16, 2007, the California Supreme Court denied the petition without comment or citation. *See* Lodged Doc. No. 8.

On October 1, 2007, Petitioner filed a petition for writ of habeas corpus with the Amador County Superior Court. *See* Lodged Doc. No. 9.  On November 14, 2007, the Superior Court issued a reasoned decision denying the petition. *See* Lodged Doc. No. 10.

On January 2, 2008, Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal, Third Appellate District. *See* Lodged Doc. No. 11.  On January 10, 2008, the California Court of Appeal denied the habeas petition without comment or citation. *See* Pet'r's Second Am. Pet. 24, ECF No. 11.[1]

On January 22, 2008, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. *See* Lodged Doc. No. 12.  On July 9, 2008, the California Supreme Court denied the habeas petition without comment or citation. *See* Pet'r's Second Am. Pet. 25.

On July 31, 2008, Petitioner filed his original federal habeas petition. *See* Pet'r's Pet., ECF No. 1.  On August 13, 2008, Petitioner consented to the jurisdiction of a United States Magistrate Judge. *See* Pet'r's Consent 1.  On August 25, 2008, Petitioner filed his first amended federal habeas petition. *See* Pet'r's First Am. Pet., ECF No. 6.  On October 8, 2008, Petitioner filed his second amended federal habeas petition. *See* Pet'r's Second Am. Pet.  On December 4, 2008, Respondent consented to the jurisdiction of a United States Magistrate Judge. *See* Resp't's Consent 1.  On January 8, 2009, Respondent filed an answer, *see* Resp't's Answer, ECF No. 19, to which Petitioner filed a traverse on February 11, 2009.  *See* Pet'r's Reply, ECF No. 23.

---

[1] The Case Management/Electronic Case Files (CM/ECF) docketing and file system is implemented, which allows the parties to electronically file pleadings and documents.  For pleadings or documents submitted in paper format, the filing is scanned and stored electronically into the CM/ECF system, except for lodged documents.  Each page of the electronic filing is numbered chronologically, whether or not the party numbered it.  If the filing is lengthy, the document is divided into parts.  Here, when a page number for a filed pleading or document is cited, the CM/ECF page number is used when available, which may not coincide with the page number that the parties used.

1

### III.  FACTUAL BACKGROUND[2]

2

***Counts I and II (possession of methamphetamine and possession of smoking device)***

3

4

On November 18, 2004, Amador County Sheriff's Deputies Rayzor and Stevens made contact with [Petitioner] as a person of interest in a burglary they were investigating.  [Petitioner] had been released from custody in a pending court case, with a search and seizure condition.  During a search of [Petitioner's] person, Deputy Rayzor removed a glass pipe, which he believed was used to smoke methamphetamine, from [Petitioner's] front pants pocket. [Petitioner] was placed under arrest for possession of the smoking device.  A search incident to [Petitioner's] arrest yielded a sock containing one bag of methamphetamine and another with white residue which was believed to be methamphetamine.

5

6

7

8

9

***Counts IV and V (possession of a smoking device and possession of marijuana)***

10

11

On November 12, 2004, Officer Michael Collins of the Jackson Police Department made contact with [Petitioner] while investigating a report of a stolen bicycle in the neighborhood. Collins knew of [Petitioner's] search condition and ordered him to empty his pockets.  [Petitioner] complied and produced a clear plastic baggie containing a leafy green substance Collins suspected to be marijuana.  Later that evening, [Petitioner] was taken into custody on suspicion of having stolen the bicycle.  A search incident to his arrest produced two glass pipes believed to be used to smoke controlled substances and a clear plastic baggie containing a small amount of a leafy green substance that was suspected to be marijuana.

12

13

14

15

16

17

***Counts XIII and XIV (possession of a smoking device and possession of marijuana)***

18

19

On August 8, 2004, three months prior to the above incidents, Deputy Jarrett Benov of the Amador County Sheriff's Department spotted [Petitioner] leaving an apartment complex by jumping down an embankment.  Deputy Benov detained [Petitioner] and noticed a bulge in his right pocket.  During a pat-down search for weapons, [Petitioner] dropped a bag from his pocket and Benov heard the sound of glass breaking.  [Petitioner] acknowledged that

20

21

22

23

24

[2] These facts are from the California Court of Appeal's opinion issued on March 7, 2007. Lodged Doc. No. 6, at 2-4.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see Moses v. Payne,* 555 F.3d 742, 746 n.1 (9th Cir. 2009); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004).

25

26

1          inside the bag was a glass pipe used to ingest methamphetamine.

2          Deputy Benov then searched a fanny pack [Petitioner] was carrying

3          and recovered a Ziplock bag containing 24.5 grams of marijuana
and a smoking pipe with burnt residue.

4              IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

5          An application for writ of habeas corpus by a person in custody under judgment of a state

6 court can be granted only for violations of the Constitution or laws of the United States.  28

7 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

8 *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

9 This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

10 the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

11 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999).  Under

12 AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

13 state court proceedings unless the state court's adjudication of the claim:

14              (1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as

15              determined by the Supreme Court of the United States; or

16              (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the

17              State court proceeding.

18 28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

19 *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

20          In applying AEDPA's standards, the federal court must "identify the state court decision

21 that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

22 "The relevant state court determination for purposes of AEDPA review is the last reasoned state

23 court decision."  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted).

24 "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

25 orders upholding that judgment or rejecting the same claim rest upon the same ground."  *Ylst v.*

26 *Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts

1    must conduct an independent review of the record to determine whether the state court clearly

2    erred in its application of controlling federal law, and whether the state court's decision was

3    objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The

4    question under AEDPA is not whether a federal court believes the state court's determination

5    was incorrect but whether that determination was unreasonable--a substantially higher

6    threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

7    "When it is clear, however, that the state court has not decided an issue, we review that question

8    *de novo*." *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

9    545 U.S. 374, 377 (2005)).

10                                V.  REQUESTS FOR REVIEW

11            The petition for writ of habeas corpus sets forth two requests.  Specifically, Petitioner

12   requests:  (1) appointment of counsel; and (2) declaratory relief.  Pet'r's Second Am. Pet. 20.

13            A.  First Request:  Appoint Counsel

14            Petitioner requests appointment of counsel in further litigation of this action.  *Id.*  The

15   Sixth Amendment right to counsel does not apply in habeas corpus actions.  *See Knaubert v.*

16   *Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986).  A district court, however, may appoint counsel to

17   represent a habeas petitioner whenever "the court determines that the interests of justice so

18   require," and such person is financially unable to obtain representation.  18 U.S.C. §

19   3006A(a)(2)(B).  The decision to appoint counsel is within the district court's discretion.  *See*

20   *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986).  Courts have made appointment of

21   counsel the exception rather than the rule by limiting it to:  (1) capital cases; (2) cases that turn

22   on substantial and complex procedural, legal, or mixed legal and factual questions; (3) cases

23   involving uneducated or mentally or physically impaired petitioners; (4) cases likely to require

24   the assistance of experts either in framing or in trying the claims; (5) cases in which the petitioner

25   is in no position to investigate crucial facts; and (6) factually complex cases.  *See generally* 1 J.

26   LIEBMAN & R. HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 12.3b, at 383-86

1  (2d ed. 1994).  Appointment is mandatory only when the circumstances of a particular case

2  indicate that appointed counsel is necessary to prevent due process violations.  *See Chaney*, 801

3  F.2d at 1196; *Eskridge v. Rhay*, 345 F.2d 778, 782 (9th Cir. 1965).

4       Appointment of counsel is not warranted in this case.  Petitioner's claims are typical

5  claims arising in habeas petitions and are not especially complex.  This is not an exceptional case

6  warranting representation on federal habeas review.  Petitioner's request for appointment of

7  counsel is denied.

8       B.  Second Request:  Declaratory Relief

9       Petitioner also requests a declaration of the rights of the parties.  Since habeas relief

10  should not be granted, declaratory relief is denied.  *See infra* Part VI.

11      This matter is now ready for decision.  For the following reasons, habeas relief is denied.

12                         VI.  CLAIMS FOR REVIEW

13      The petition for writ of habeas corpus sets forth two grounds for relief.  In ground one,

14  Petitioner argues defense counsel should have called and investigated Kris Keller as an alibi

15  witness.  Pet'r's Second Am. Pet. 5-6, 21.  In what may be construed as ground two, Petitioner

16  argues that the photographic lineup was unduly suggestive.  *Id.* at 9.

17      A.  Ground One:  Failure to Call or Investigate Kris Keller as an Alibi Witness

18          1.  Background

19      Jason Carney lives with his wife, Lisa Carney, and their three daughters at 614 Mill Place,

20  Jackson, California.  Lodged Doc. No. 2, Rep.'s Tr. 88.  On November 12, 2004, prior to 10:30

21  a.m., Jason's 21-speed mountain bicycle was in the garage, which was connected to the house.

22  *Id.* at 90.  Also on November 12, 2004, at around 10:20 a.m., Lisa stopped by the mailboxes on

23  her drive home.  *Id.* at 93-96.  The mailboxes are about thirty-nine feet away from the house.  *Id.*

24  at 96-97.  From the mailboxes, Lisa looked at her home and "saw somebody crouching in front of

25  this rock that [her] children know is the boundary of where they can play."  *Id.* at 97-98.  She first

26  thought "it was the water meter person, because the water meter is right there."  *Id.* at 98.  But,

"the person wasn't wearing a uniform," so she "assumed it was [her] husband" playing with their children.  *Id.*  Lisa saw this man go "[f]rom the rock at the corner of [her] house[,] to the direction of the house crossing over the driveway."  *Id.* at 99.  Lisa stopped looking, picked up the mail, and "got into [her] vehicle to drive home."  *Id.*  Lisa then observed "somebody flying on the bicycle out of [her] driveway" past the truck parked there.  *Id.*  She thought, "My husband would never drive that fast on a bike," and "[t]hat would never be my husband."  *Id.* (internal quotation marks omitted).

Lisa had an opportunity to look at the person on the bicycle.  *Id.* at 101.  She noticed his forehead was similar to her husband's forehead, saw his eyes and face, and made eye contact with this individual.  *Id.*  She was unable to see what direction the bicycle had gone, though, because she had "turned around."  *Id.* at 102.  Lisa then called her husband on her cell phone and asked if the bicycle was in the garage.  *Id.*  He said it was not, so Lisa called the police from her cell phone.  *Id.*  Officer Michael Collins from the Jackson Police Department responded to Lisa's call.  *Id.* at 102-03.  Lisa told Officer Collins that the individual on the bicycle looked a lot like her husband, wore a beanie and a jacket, and had a goatee.  *Id.* at 103.

After collecting information from the Carneys, Officer Collins checked the area for the bicycle and the suspect.  *Id.* at 131.  Officer Collins saw Petitioner walking northbound on New York Ranch Road, about three blocks away from the Carneys' residence.  *Id.*  Petitioner was wearing dark pants, a dark shirt, and had no beanie.  *Id.* at 132, 142.  Officer Collins gave Petitioner a ride to his destination, and returned to the area of Mill Place and Placer Drive around 11:30 a.m.  *Id.* at 132.  Officer Collins found the stolen bicycle behind some bushes.  *Id.* at 133.  Officer Collins brought the bicycle to Lisa at Mill Place, and Lisa confirmed it was her husband's bicycle.  *Id.*

Lisa then went to the police department.  *Id.* at 134.  She identified Petitioner from a photographic lineup of six people.  *Id.* at 104.  Petitioner did not have a goatee in the photograph.  *Id.* at 117.

That same day, Officer Mullins contacted Petitioner at 9:40 p.m., at Broadway and Water Street, and arrested him. *Id.* at 137-38. Petitioner denied knowing anything about the bicycle, and said he was at a friend's house during the time. *Id.* at 143. Petitioner did not provide the friend's name or the address. *Id.* at 144.

At trial, Lisa testified she was "very certain" that Petitioner was the individual who stole her husband's bicycle. *Id.* at 121.

### 2. State Court Decision

Here, the state court decision appropriate for review is the Superior Court's decision because it is the "last reasoned state court decision" to address Petitioner's ineffective assistance of counsel claim. *Delgadillo*, 527 F.3d at 925 (citations omitted). The Superior Court rejected Petitioner's claim, stating in relevant part:

> Petitioner alleges ineffective assistance of counsel. Petitioner contends counsel was ineffective for failing to investigate a potential alibi witness and failing to call said alibi to the stand to testify.
>
> The petitioner must establish, by a preponderance of the evidence, facts that demonstrate a basis for habeas corpus relief. (*In re Cox* (2003) 30 Cal.4th 974.) The petition should state fully and with particularity the facts on which relief is sought, as well as include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. (*People v. Karis* (1988) 46 Cal.3d 612, 656; *In re Swain* (1949) 34 Cal.2d 300, 304; *People v. Duvall* (1995) 9 Cal.4th 464.) Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing. (*People v. Karis*, *supra*.)
>
> To properly plead a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient, as it fell below the standard of a reasonably competent attorney, and that said deficiency resulted in a less favorable outcome to the petitioner. (*People v. Cox* (1991) 53 Cal.3d 618, 655-656.)
>
> In evaluating a claim of ineffective assistance of counsel, great deference is accorded counsel's trial tactics. (*In re Avena* (1996) 12 Cal.4th 694, 722.)
>
> A fair assessment of attorney performance requires that every effort

9

1   be made to eliminate the distorting effects of hindsight, to
2   reconstruct the circumstances of counsel's challenged conduct, and
    to evaluate the conduct from counsel's perspective at the time.
3   Because of the difficulties in making the evaluation, a court must
    indulge a strong presumption that counsel's conduct falls within
4   the wide range of reasonable professional assistance; that is, the
    defendant must overcome the presumption that, under the
5   circumstances, the challenged action might be considered sound
    trial strategy.  There are countless ways to provide effective
6   assistance in any given case.  Even the best criminal defense
    attorneys would not defend a particular client in the same way.
7   (*Strickland v. Washington* (1984) 466 U.S. 668, 691 [internal
    citations omitted]; *see also People v. Bunyard* (1988) 45 Cal.3d
8   1189, 1215.)

9   In addition to demonstrating defective representation, the petitioner
    must affirmatively demonstrate prejudice to prevail on a claim of
10  ineffective assistance of counsel.  (*Cox, supra*, at 656.)  In order to
    prove prejudice, the defendant must demonstrate that there is a
11  reasonable probability that, but for counsel's deficient
    performance, the result of the proceeding would have been
12  different.  (*Strickland*, supra, at 694.)  A reasonable probability is a
    probability sufficient to undermine confidence in the outcome.
13  (*ibid.*)

14  In assessing a claim of failure to investigate, great deference is
    given to counsel's decisions.  (*id.* at 690-691.)  Counsel has a duty
15  to reasonably investigate matters or, conversely, to make the
    decision that further investigation is not necessary.  (*ibid.*)  A
16  decision not to investigate is assessed for reasonableness in all
    circumstances, while still giving great deference to counsel's
17  decisions.  (*ibid.*)

18  Counsel's failure to call certain witnesses is considered a trial
    tactic, which typically will not be subject to the exercise of judicial
19  hindsight by the reviewing court.  (*People v. Madaris* (1981) 122
    Cal.App.3d 234, 242 [disapproved on independent grounds].)

20  Petitioner fails to state a prima facie case of deficient performance
    by trial counsel.  The decision not to investigate further and/or call
21  the potential alibi witness to the stand was a tactical decision,
    which this Court will not interfere with.  Moreover, assuming
22  arguendo trial counsel's performance was deficient, Petitioner fails
    to meet his burden of demonstrating prejudice as a result of any
23  action or inaction of his trial attorney.

24  Lodged Doc. No. 10, at 1-3.

25          3. Legal Standard for Ineffective Assistance of Counsel Claim

26  The Sixth Amendment guarantees the effective assistance of counsel.  The United States

10

Supreme Court sets forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  An allegation of ineffective assistance of counsel requires that a petitioner establish two elements:  (1) counsel's performance was deficient; and (2) the petitioner was prejudiced by the deficiency.  *Id.* at 687; *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).

First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  To this end, a petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *Id.* at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  *Id.*  "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland,* 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.*; *see also Williams,* 529 U.S. at 391-92; *Laboa v. Calderon,* 224 F.3d 972, 981 (9th Cir. 2000).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  *Strickland*, 466 U.S. at 697.  Since the petitioner must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.  However, certain instances are legally presumed to result in prejudice, e.g., where there was an actual or constructive denial of the counsel's assistance, or where the State interfered with counsel's assistance.  *Id.* at 692; *see*

11

1  *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984).

2      4.  Analysis of Ineffective Assistance of Counsel Claim

3      a.  Failure to Call Kris Keller as an Alibi Witness

4      Petitioner argues that trial counsel was deficient for failing to call Kris Keller as an alibi

5  witness.  Pet'r's Second Am. Pet. 21.  On November 12, 2004, at 10:45 a.m., Petitioner alleges

6  he was walking to the Amador County Probation Office.  *Id.* at 5.  Petitioner states he was

7  "coming from [his] friend['s] [place], Kris Keller.  Keller worked and lived at the same address,

8  Oak Manor, 223 New York Ranch Road, Jackson[, California]."  *Id.*  According to Petitioner, the

9  probation office is located on New York Ranch Road, twenty minutes walking distance from

10  Keller's residence.  *Id.*  Petitioner states that "just minutes after [he] leave[s] Keller['s], [he] was

11  stopped by Officer Collins."  *Id.*  Officer Collins then took Petitioner to probation, verified that

12  Petitioner was supposed to be there, and left.  *Id.*  Later that night, Petitioner alleges he "was

13  arrested for a burglary that happened while [he] was at Keller['s]."  *Id.*

14      Petitioner also provides a declaration from his trial counsel, where trial counsel explains

15  why he did not call Keller:

16          4.  Several weeks prior to trial, [Petitioner] informed me of a
possible alibi witness by the name of [K]ris Keller.

17
18          5.  [Petitioner] claimed that he was with Mr. Keller at Mr. Keller's
place of business on the day and time of the burglary and that Mr.
Keller would be willing to testify to that fact.

19
20          6.  Mr. Keller's place of business was Amador Residential Care
that is located at 155 Placer Drive, Jackson, California.

21          7.  The location of Mr. Keller's business is located within
approximately one hundred and fifty feet from the home that

22  [Petitioner] was alleged to have burglarized.

23          8.  Mr. Keller was known to me to be a convicted felon.

24          9.  I informed [Petitioner] that it was unwise to produce evidence at
trial that places him within a few houses of the scene of the crime.

25
26          10.  I further informed [Petitioner] that because Mr. Keller was a
convicted felon Mr. Keller's credibility would be at issue at trial.

11.  I informed [Petitioner] that I would not be calling his claimed alibi witness because it was unwise to place himself in the close proximity of the scene of the burglary and to further call a witness with questionable credibility.

12.  [Petitioner] informed me that he understood that Mr. Keller would not be called as a defense witness.

Pet'r's Second Am. Pet. Ex. D, at 15-16.

The failure to call a witness cannot establish ineffective assistance when defense counsel is well-informed of the facts and circumstances of the witness's account. *Eggleston v. U.S.*, 798 F.2d 374, 376 (9th Cir. 1986).  Trial counsel's tactical decisions deserve deference when counsel makes an informed decision based on strategic trial considerations, and the decision appears reasonable under the circumstances. *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).  The ultimate decision not to call witnesses at trial is well within counsel's "full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision . . . to decide not to put certain witnesses on the stand . . . .").

Petitioner failed to show it was objectively unreasonable for trial counsel not to call Keller as a witness.  First, trial counsel reasonably decided not to call Keller because Keller's testimony would have placed Petitioner near the Carneys' residence, where the burglary occurred.  Pet'r's Second Am. Pet. Ex. D, at 15.  Petitioner points out that Petitioner and trial counsel provided different addresses for where Keller resided and worked.  *See* Pet'r's Second Am. Pet. 9.  Petitioner alleges Keller worked and resided at Oak Manor Senior Retirement Home, at 223 New York Ranch Road, Jackson, California.  *See id.* at 5.  In his declaration, trial counsel stated Petitioner claimed to be with Keller at Amador Residential Care, at 155 Placer Drive, Jackson, California.  This difference in address is insignificant because the two places are approximately 0.4 miles apart, or an eight minute walk, using Google Maps.  *See, e.g., Johnson v. Zepp*, No. CV 10-6810 CJC (AJW), 2010 WL 5116697, at *3 n.2 (C.D. Cal. Oct. 29, 2010) (using Google Maps to note Wasco State Prison is approximately 170 miles from federal

13

1  courthouse located at 411 West Fourth Street, Santa Ana, California); *Warwick v. Univ. of the*

2  *Pac.*, No. C 08-03904 CW, 2010 WL 2680817, at *3 n.8 (N.D. Cal. July 6, 2010) (taking judicial

3  notice Ukiah is approximately 100 miles from San Quentin, drive of approximately two hours,

4  using Google Maps).

5        The difference of distance between 155 Placer Drive and the Carneys' residence, and 223

6  New York Ranch Road and the Carneys' residence, is also insignificant.  The Carneys' residence

7  (614 Mill Place) and 155 Placer Drive are approximately 0.1 miles apart, or a three minute walk.

8  *See* Google Mags, http://maps.google.com.  The Carneys' residence (614 Mill Place) and 223

9  New York Ranch Road are approximately 0.4 miles apart, or an eight minute walk.  *See id.*  Trial

10  counsel's reasoning for not wanting to call Keller because it would place Petitioner "in such

11  close proximity to the scene of the burglary" was reasonable, whether Petitioner came from 155

12  Placer Drive or 223 New York Ranch Road.  Pet'r's Second Am. Pet. Ex. D, at 15; *see Denham*

13  *v. Deeds*, 954 F.2d 1501, 1505 (9th Cir. 1992) (holding trial counsel did not err in not calling

14  witness who "would have done 'more harm than good'").

15        Second, trial counsel reasonably chose not to call Keller as an alibi witness because

16  "Keller was a convicted felon," and his "credibility would be at issue at trial."  Pet'r's Second

17  Am. Pet. Ex. D, at 15.  In *United States v. Harden*, the Ninth Circuit denied an ineffective

18  assistance claim for trial counsel's failure to call a witness who had a Fifth Amendment right not

19  to testify and who had credibility problems because he was a convicted felon.  846 F.2d 1229,

20  1231-32 (9th Cir. 1999).  The Ninth Circuit reasoned that the witness's credibility issues made it

21  a reasonable trial tactic not to call him.  *Id.*  Similarly, in this case, Keller was a convicted felon

22  whose credibility issues made it a reasonable tactical decision not to call him.  Pet'r's Second

23  Am. Pet. Ex. D, at 15.  Trial counsel's decision not to call Keller to testify does not establish that

24  his performance fell below objective standards of reasonableness.

25        Even if Petitioner was able to establish that counsel's performance was deficient, he

26  would be unable to establish prejudice.  To establish prejudice caused by the failure to call a

1    witness, Petitioner must show that the witness was likely to have been available to testify; that

2    the witness would have given the proffered testimony; and that the witness's testimony would

3    have created a reasonable probability that the jury would have reached a verdict more favorable

4    to Petitioner. *See Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003). Petitioner has

5    failed to demonstrate any of these requirements.

6          First, Petitioner failed to provide an affidavit from Keller that Keller would have testified

7    on Petitioner's behalf. Second, even if Keller would have testified on Petitioner's behalf,

8    Petitioner cannot show that Keller would have given the proffered testimony, i.e., that Petitioner

9    was with Keller at the time of the burglary. Rather, in a letter to Petitioner, Petitioner's appellate

10   counsel recounted that Keller "did not remember the date of his meeting with [Petitioner], or

11   even the day of the week:"

12               [Keller] told me one morning in November 2004, he came home
                 from work at about 7:00 a.m. He said you dropped by and the two
13               of you had a couple of beers and that this was not unusual. He said
                 that while you did not live there, you dropped by often. He
14               remembered the two of you discussing the fact that you needed to
                 go to probation and that you left at around 11:00 a.m. He did not
15               remember seeing you again that day. The next time he saw you,
                 three or four days later, you told him you had been picked up by
16               the police and accused of stealing. *Unfortunately, Keller did not
                 remember the date of his meeting with you or even the day of the
17               week. I asked him if there was some way he could figure out the
                 date by associating it with some other event; he said no.*

18

19   Pet'r's Second Am. Pet. Ex. C, at 13 (emphasis added).

20         Third, Keller's prospective testimony would not have created a reasonable probability

21   that the jury would have reached a different verdict. Lisa identified Petitioner as the individual

22   who stole the bicycle on the day of the crime and at trial, and she was "very certain" of her in-

23   court identification. Lodged Doc. No. 2, Rep.'s Tr. 104-05, 101, 121. Petitioner and the stolen

24   bicycle were both found three blocks from the scene of the burglary. *Id.* at 131-33. Given the

25   other evidence in the record, Petitioner cannot show that Keller's prospective testimony would

26   have created a reasonable probability that the jury would have reached a verdict more favorable

1   to him.  Petitioner is unable to establish prejudice, and this claim fails.

2                   b.  Failure to Investigate Kris Keller as an Alibi Witness

3          Petitioner also argues that trial counsel failed to investigate Kris Keller as an alibi

4   witness.  Pet'r's Second Am. Pet. 21.  The record shows that Petitioner was familiar with Keller

5   and his prospective testimony, making further investigation unnecessary.  Pet'r's Second Am.

6   Pet. Ex. D, at 15; *see Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable

7   investigations or to make a reasonable decision that makes particular investigations

8   unnecessary."); *Eggleston*, 798 F.2d at 376 ("A claim of failure to interview a witness may sound

9   impressive in the abstract, but it cannot establish ineffective assistance when the person's

10  account is otherwise fairly known to defense counsel."  (citation and internal quotation marks

11  omitted)).  Petitioner's ineffective assistance of counsel claim fails.

12         B.  Ground Two:  Unduly Suggestive Lineup

13         In Petitioner's Table of Exhibits, Petitioner mentions in one sentence that "Officer

14  Collins testif[ied] that he suggested Petitioner was guilty based solely on a likeness in appearance

15  to Mr. Carney[,] *making the identification unduly suggestive*."  Pet'r's Second Am. Pet. 9

16  (emphasis added).  Petitioner, however, does not list an unduly suggestive lineup claim as a

17  separate ground in the petition.  *See id.* at 4.  To the extent that Petitioner raises the claim that his

18  lineup was unduly suggestive, that claim also fails.

19             1.  Exhaustion

20                   a.  Legal Standard for Exhaustion

21         "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available

22  state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon

23  and correct' alleged violations of prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29

24  (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)).  "The state courts

25  have been given a sufficient opportunity to hear an issue when the petitioner has presented the

26  state court with the issue's factual and legal basis."  *Weaver v. Thompson*, 197 F.3d 359, 364 (9th

Cir. 1999) (citing *Duncan*, 513 U.S. at 365 (legal basis); *Correll v. Stewart*, 137 F.3d 1404, 1411-12 (9th Cir. 1998) (factual basis)).  "A petitioner has satisfied the exhaustion requirement if:  (1) he has 'fairly presented' his federal claim to the highest state court with jurisdiction to consider it, . . . or (2) he demonstrates that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

   To have exhausted via the first avenue, a petitioner must have presented each federal claim as a federal claim to the California Supreme Court on (1) direct review (e.g., in a petition for review); or (2) collateral review (e.g., in a petition for a writ of habeas corpus). *See Reiger v. Christensen*, 789 F.2d 1425, 1427 (9th Cir. 1986); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1990); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("To 'fairly present' [a] federal claim to the state courts, [a petitioner] had to alert the state courts to the fact that he was asserting a claim under the United States Constitution." (citing *Duncan*, 513 U.S. at 365-66)).  A "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." *Duncan*, 513 U.S. at 366.

   A claim is considered exhausted via the second avenue "'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *see also Valerio v. Dir. of the Dep't of Prisons*, 306 F.3d 742, 770 (9th Cir. 2002) ("[T]he claim is exhausted because it is procedurally barred.").  A claim is also "exhausted because a return to state court for exhaustion would be futile." *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001) (citation and internal quotation marks omitted).

### b.  Analysis of Exhaustion

   "[T]he California Constitution provides that each of the three levels of state courts -- Superior Courts, Courts of Appeal, and the Supreme Court -- has 'original jurisdiction in habeas corpus proceedings.'" *Gaston v. Palmer*, 387 F.3d 1004, 1010 (9th Cir. 2004) (quoting Cal. Const. art. VI, § 10), *amended for other reasons by* 447 F.3d 1165 (9th Cir. 2006).  A California

1      prisoner may file an original habeas petition in each of the three courts, and each court may

2      exercise its original jurisdiction. *See, e.g.*, *In re Clark*, 5 Cal. 4th 750, 760-62, 21 Cal. Rptr. 2d

3      509, 855 P.2d 729 (1993) (noting petitioner's first habeas application was filed with California

4      Supreme Court). When the state's higher courts issue postcard denials, i.e., decisions without

5      comment or citation, the Ninth Circuit construes those denials as decisions on the merits.

6      *Gaston*, 387 F.3d at 1013 (citing *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir. 1992)); *see In re*

7      *Clark*, 5 Cal. 4th at 769 n.9, 21 Cal. Rptr. 2d 509, 855 P.2d 729 (noting "summary denial" of

8      state habeas petition "does not mean that the court has not considered the merits of the claims").

9          In Petitioner's state habeas petition filed with the California Supreme Court, Petitioner

10     wrote that "[Officer] Collins had his mind set that [Petitioner] indeed was the suspect and

11     [Officer] Collins informs them, the Carneys, of this belief without any evidence other then [sic]

12     the likeness between Mr. Carney and [Petitioner] . . . ." Lodged Doc No. 12. District courts are

13     required to liberally construe a pro se petition. *Haines v. Kerner*, 404 U.S. 519, 520 (1972);

14     *Tatum v. Christensen*, 786 F.2d 959, 963 n.4 (9th Cir. 1985). It can be argued that Petitioner

15     exhausted this claim because the California Supreme Court reviewed it in a state habeas petition.

16     *See Johnson*, 88 F.3d at 829.

17          Even if Petitioner's claim is unexhausted, an application for a writ of habeas corpus may

18     be denied on the merits, notwithstanding the applicant's failure to exhaust available state

19     remedies. 28 U.S.C. § 2254(b)(2). A federal court considering a habeas petition may deny an

20     unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable."

21     *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). The merits of Petitioner's remaining claim

22     of an unduly suggestive lineup will be addressed.

23                     2. Legal Standard for Unduly Suggestive Lineup Claim

24          The Due Process Clause of the United States Constitution prohibits the use of

25     identification procedures which are "unnecessarily suggestive and conducive to irreparable

26     mistaken identification." *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other*

*grounds by Griffith v. Kentucky*, 479 U.S. 314, 326 (1987) (discussing retroactivity of rules

propounded by Supreme Court).   To determine the admissibility of identification testimony,

courts employ a two-step analysis.   *United States v. Love*, 746 F.2d 477, 478 (9th Cir. 1984).

The first step focuses on whether the identification procedure was impermissibly

suggestive.   *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977); *Neil v. Biggers*, 409 U.S.

188, 199-200 (1972)).   A suggestive identification violates due process if it was unnecessary or

"gratuitous" under the circumstances.   *Biggers*, 409 U.S. at 198.   An identification procedure is

suggestive where it "[i]n effect . . . sa[ys] to the witness, '*This* is the man.'"   *Foster v. California*,

394 U.S. 440, 443 (1969).   Each case must be considered on its own facts, and whether due

process was violated depends on the totality of the circumstances surrounding the confrontation.

*Simmons v. United States*, 390 U.S. 377, 383 (1968); *see also Stovall*, 388 U.S. at 302.   If the

court finds that a challenged procedure is not impermissibly suggestive, the due process inquiry

ends.   *United States v. Bagley*, 772 F.2d 482, 493 (9th Cir. 1985) ("Having concluded that the . . .

show-up was a legitimate identification procedure, we need not reach the question whether the

[witness's] identification was reliable under the test enunciated in *Biggers*."), *cert. denied*, 475

U.S. 1023 (1986).

If the identification procedure was impermissibly suggestive, a reviewing court proceeds

to the second step and determines whether, under the totality of the circumstances, an

identification that resulted from it was nevertheless reliable.   *Biggers*, 409 U.S. at 198.   Factors

to be considered in evaluating the reliability of an identification after a suggestive procedure

include:  (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the

witness's degree of attention paid to the criminal; (3) the accuracy of the witness's prior

description of the criminal; (4) the level of certainty demonstrated by the witness at the time of

the confrontation; and (5) the length of time between the crime and the confrontation.   *Id.* at

199-200; *Torres v. City of Los Angeles*, 548 F.3d 1197, 1209 (9th Cir. 2008), *cert. denied*, ___

U.S. ___, 129 S. Ct. 1995 (2009).

1                    3.  Analysis of Unduly Suggestive Lineup Claim

2          Petitioner argues the photographic lineup was unduly suggestive because Officer Collins

3  told Lisa that "Petitioner was guilty based solely on a likeness in appearance" to her husband.

4  *See* Pet'r's Second Am. Pet. 9.  On cross examination, defense counsel made it appear as if Lisa

5  picked Petitioner out of the lineup solely because she was looking for someone who looked like

6  her husband, not because Lisa thought Petitioner was the person who stole the bicycle:

7              [DEFENSE COUNSEL:]  So, you picked out the person who you
              thought looked like your husband; correct?
8
              [LISA:]  Correct.
9
              [DEFENSE COUNSEL:]  Because you know the person who took
10             your husband's bike looked like your husband?

11             [LISA:]  Correct.

12             [DEFENSE COUNSEL:]  And out of those six photographs,
              [Petitioner] was the only one that looked like your husband?
13
              [LISA:]  Correct.
14

15  Lodged Doc. No. 2, Rep.'s Tr. 117.

16         On redirect examination, Lisa clarified she was looking for the person who took the

17  bicycle, and not just someone who looked like her husband:

18             [PROSECUTOR:]  Now, on cross[]examination, there was some
              discussion regarding the photo lineup.  When you looked at the
19             photo lineup, were you looking for the person you saw right in
              front of [you on] your bicycle, or were you looking for someone
20             that looked like your husband?

21             [LISA:]  I was looking for someone who looked like the person I
              saw riding in front of me.
22

23  *Id.* at 120.

24         On cross examination of Officer Collins, defense counsel made it appear as if Officer

25  Collins led the Carneys to believe Petitioner was the thief because he resembled Lisa's husband:

26             [DEFENSE COUNSEL:]  Did you ever inform either Mr. [o]r Mrs.

                                         20

1     Carney of your suspicions of [Petitioner] based on your
      observations of Mr. Carney?
2
      [OFFICER COLLINS:]  I may have.  I don't recall, exactly.
3
      [DEFENSE COUNSEL:]  So, it's possible that you had already
4     planted the seed with either or both Mr. [a]nd Mrs. Carney that you
      had suspected [Petitioner] of stealing that bicycle; is that true?
5
      [OFFICER COLLINS:]  I don't think I planted anything, but --
6
      [DEFENSE COUNSEL:]  Those are my words.  You might have
7     led them to believe that you were under the suspicion that it was
      [Petitioner] who stole the bike based on your observation of a
8     likeness which you considered . . . between Mr. Carney and
      [Petitioner]?
9
      [OFFICER COLLINS:]  Yes.
10

11   *Id.* at 143-44.

12        On redirect examination of Officer Collins, Officer Collins clarified he did not say

13   anything to persuade Lisa to pick Petitioner out of the lineup:

14        [PROSECUTOR:]  When you showed Ms. Carney the
          photographic lineup, did you say anything to her to persuade her to
15        pick a particular picture?

16        [OFFICER COLLINS:]  No, I did not.

17   *Id.* at 144.  Nothing in the record indicates that the police revealed which photograph in the array

18   contained the individual who allegedly looked like Lisa's husband.  Further, even before meeting

19   with Officer Collins, Lisa thought the individual who stole the bicycle resembled her husband.

20   *See id.* at 98-99.  Petitioner's logic is fallible because choosing someone from the lineup who

21   resembled her husband, and choosing the individual who Lisa thought stole the bicycle, are not

22   mutually exclusive to Lisa.  *See id.*

23        Even assuming arguendo that the photographic lineup was unduly suggestive, Lisa's

24   identification of Petitioner was reliable under the totality of the circumstances.  *See Biggers*, 409

25   U.S. at 199-200.  First, Lisa had ample opportunity to view Petitioner's face.  *See id.* at 199.  Lisa

26   had an opportunity to view Petitioner at two different locations on November 12, 2004.  Lodged

21

Doc. No. 2, Rep.'s Tr. 119.  The first opportunity was "at a distance while [she] was getting [the] mail," and the mailboxes are about thirty-nine feet away from her house, where the bicycle was stolen.  *Id.* at 96-97, 119.  The second vantage point was where Petitioner "rode directly in front of [Lisa]" so that they were "face-to-face."  *Id.* at 119.  Petitioner was "approximately fifteen feet" away from Lisa at this point, and they made eye contact.  *Id.*

Second, Lisa paid close attention to Petitioner.  *See Biggers*, 409 U.S. at 199.  Lisa "saw his whole face," saw his eyes, and noticed that Petitioner's forehead, complexion, and physical size was similar to those of her husband.  Lodged Doc. No. 2, Rep.'s Tr. 101, 120.  When Lisa "looked at [Petitioner] face-to-face, [she] could clearly see it wasn't [her husband]."  *Id.* at 114.  Lisa drove after Petitioner, "trying to look at him and look at him again . . . ."  *Id.* at 102.

Third, although the record does not reveal how certain Lisa was when she picked Petitioner's photograph out of the lineup, the record does show that Lisa was "very certain" of her in-court identification of Petitioner as the perpetrator.  *Id.* at 121; *see Biggers*, 409 U.S. at 199.

> [PROSECUTOR:]  Now, as you sit here today and you made your identification of [Petitioner] as being the individual that stole your husband's bicycle, how certain are you that he is the same person in the courtroom that you saw that day?
>
> [LISA:]  I'm very certain it's the same person.

Lodged Doc. No. 2, Rep.'s Tr. 121.

Fourth, Lisa identified Petitioner on the same day that the crime occurred.  *See Biggers*, 400 U.S. at 199-200.  Because Lisa's identification of Petitioner was reliable under the totality of the circumstances, the jury was entitled to resolve any dispute over the accuracy of the identification.  *See Manson*, 432 U.S. at 116 ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.").  Petitioner's construed claim of an unduly suggestive identification is without merit.

///

VII.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Petitioner's request for appointment of counsel is DENIED;

2.  Petitioner's request for declaratory relief is DENIED;

3.  Petitioner's application for writ of habeas corpus is DENIED and DISMISSED with prejudice;

4.  The Clerk of Court is DIRECTED to enter judgment; and

5.  The Court DECLINES to issue a certificate of appealability.

DATED:        February 7, 2011.

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE